IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KRISTI D. MCSPADDEN,                          Civil No. 06-6123-AA
                                                OPINION AND ORDER

        Plaintiff,

    vs.

JOANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.
_____

Kathryn Tassinari
Drew L. Johnson
Attorneys at Law
1700 Valley River Drive, First Floor
Eugene, OR 97401
        Attorneys for plaintiff


1 – OPINION AND ORDER

Karin Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902
    Attorneys for defendant


AIKEN, Judge:

    Plaintiff, Kristi D. McSpadden, brings this action pursuant
to the Social Security Act (the Act), 42 U.S.C. §§ 405(g),
1383(c)(3), to obtain judicial review of a final decision of the
Commissioner of Social Security (Commissioner).  The Commissioner
denied plaintiff's application for Disability Insurance Benefits
(DIB) under Title II of the Social Security Act, and for
Supplemental Security Income (SSI) disability benefits under
Title XVI of the Act.  This court has jurisdiction to review the
Commissioner's decision under 42 U.S.C. § 405(g).  For the
reasons set forth below, the Commissioner's decision is AFFIRMED,
and this case is DISMISSED.

PROCEDURAL BACKGROUND

    Plaintiff protectively filed her application for DIB and SSI
benefits on September 5, 2002.  Tr. 68-69.  Plaintiff alleged
disability since January 16, 1998, due to multi-level
degenerative disc disease, myofascial pain syndrome, and
residuals of a left knee meniscal tear with chondromalacia.  Tr.
56.  Her applications were denied initially, and she requested a

2 – OPINION AND ORDER

hearing.  Tr. 45.  On March 2, 2005, after a hearing, the
Administrative Law Judge (ALJ) found that plaintiff had the
ability to make a vocational adjustment to other work existing in
significant numbers in the national economy, tr. 25, and thus,
was not disabled within the meaning of the Act. Tr. 13-27.  The
Appeals Council denied plaintiff's request for review, tr. 9-11,
making the ALJ's decision the final agency decision.  See 20
C.F.R. §§ 404.981, 416.1481.  This Court has jurisdiction under
42 U.S.C. § 405(g), which provides for district court
jurisdiction to review final decisions of the Commissioner.

STATEMENT OF THE FACTS

    Plaintiff was 47 years old at the time of the hearing
decision.  Tr. 586.  Plaintiff has a high school education and
attended one year of college.  Id.  She has past work experience
as a receptionist, an order taker, and an administrative clerk.
Tr. 613.  Plaintiff last worked in September 2001.  Tr. 586.  She
alleges disability since January 16, 1998, due to a multi-level
degenerative disc disease. Tr. 56.

STANDARD OF REVIEW

    This court must affirm the Secretary's decision if it is
based on proper legal standards, and the findings are supported
by substantial evidence in the record. Hamcock v. Bowen, 879 F.
2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than
a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401

3 – OPINION AND ORDER

(1971) (quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id</u>.  The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." <u>Martinez v. Heckler</u>, 807 F. 2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. <u>Howard v. Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, plaintiff must demonstrate an "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary of Health and Human Services (Secretary) has established a five-step sequential process for determining whether a person is disabled within the meaning of the Act. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920.  First, the Secretary must determine whether a claimant is engaged in "substantial gainful activity." <u>Id</u>.  If so, the claimant is not disabled and benefits are denied. <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two, the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R. §§

404.1520(c), 416.920(c) (providing severity regulation for this determination).  If not, the claimant is not disabled, and the disability claim is denied.  Id. at 141.  If, however, the impairment is severe, the evaluation proceeds to the third step. Id.

In step three, the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude gainful activity." Id.; see 20 C.F.R. §§ 404.1520(d), 416.920(d). The criteria for these listed impairments, also called Listings, are set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments).  If so, the claimant is conclusively presumed disabled. Yuckert, 482 U.S. at 141.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step. Id.

In step four, the Secretary determines whether the impairment prevents the claimant from performing "past relevant work." Id; see 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can work, she is not disabled. Id.  If the claimant cannot perform this work, the fifth and final step of the process determines whether he or she is able to perform other work in the national economy in view of his or her age, education, and work experience. Yuckert, 482 U.S. at 142.
///

5 – OPINION AND ORDER

In step five, the Secretary must establish that claimant can perform other work. Id. at 141-42; see 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).  If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled and thus, not entitled to disability benefits. Yuckert, 482 U.S. at 142; see 20 C.F.R. §§ 404.1566, 416.966.

                              DISCUSSION

The ALJ's Findings

     At step one, the ALJ, after noting that the matter could not be decided dispositively, did not determine whether plaintiff engaged in substantial gainful activity in 2001.  The ALJ, however, then found that plaintiff had not engaged in substantial gainful activity in other years since the alleged onset of disability.  This finding is not in dispute.

     At step two, the ALJ found that plaintiff had severe impairments in the nature of degenerative disc disease, chronic pain syndrome, residuals of a left knee meniscal tear with chondromalacia, and depression.  This finding is not in dispute.

     At step three, the ALJ found that plaintiff's impairments, both severe and non-severe, singularly and in combination, did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation Number 4.  Furthermore, in evaluating plaintiff's functional capacity, the ALJ found

plaintiff not credible.  This finding is in dispute.

Regarding plaintiff's residual functional capacity (RFC), the ALJ found that plaintiff was capable of performing a reduced range of sedentary exertional level work.  Specifically, the ALJ found that plaintiff retained the following RFC: lift and carry less than 10 pounds; stand and walk for at least two hours in an eight-hour workday, but needs to sit as necessary; sit at least six hours in an eight-hour workday; climb ladders and scaffolds and stoop on an occasional basis; avoid dangerous hazards; difficulty sustaining attention and concentration for extended periods on complex or detailed tasks; able to maintain attention on one to three-step tasks and occasionally on more complex tasks; precluded from frequent contact with the public and coworkers, although occasional contact is acceptable; and limited from independently formulating plans and goals.

At step four, the ALJ found plaintiff incapable of performing any of her past relevant work.  This finding is not in dispute.

At step five, considering plaintiff's RFC, age, education, and past work experience and relying on the vocational expert (VE) testimony, the ALJ found plaintiff capable of performing other work that exists in significant numbers in the national economy and thus, not disabled within the meaning of the Medical-Vocational Guidelines.  This finding is in dispute.

7 – OPINION AND ORDER

Plaintiff's Allegations of Error

Plaintiff makes the following assertions of error. The ALJ improperly: (1) rejected the opinion of Dr. Kosek, her treating pain physician, to the effect that plaintiff suffers from "real pain;" (2) rejected plaintiff's testimony regarding the severity of her impairments; and (3) found plaintiff capable of performing other work that exists in significant numbers in the national economy.

A.    Substantial Evidence Supports the ALJ's Determination to Discount the Medical Opinion of Plaintiff's Treating Physician

Plaintiff alleges that the ALJ improperly discounted the testimony of plaintiff's treating physician, Dr. Kosek. Specifically, plaintiff relies on the testimony of Dr. Kosek, where, in response to a letter (1999 Letter) from plaintiff's Worker's Compensation counsel, he opined on September 24, 1999, that plaintiff was "suffering from a real pain." Tr. 568. Dr. Kosek's statements must, however, be read in the context of the overall diagnostic picture he draws.

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. Batson v. Commissioner, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004). In effect, the treating physician's opinion on the ultimate issue of

disability is not necessarily conclusive, and the ALJ may disregard the treating physician's opinion after setting forth "specific, legitimate reasons for doing so," where the decision is based on substantial evidence. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). This burden may be met by providing a detailed summary of the facts and conflicting evidence, along with a reasoned interpretation thereof. Id. Finally, the ALJ's reasons must be "clear and convincing." Rhodes v. Schweiker, 660 F.2d 722, 723 (9th Cir. 1981).

The ALJ provided clear and convincing reasons with sufficient detail and factual support to justify rejecting Dr. Kosek's opinion. Plaintiff alleges that the ALJ discounted the medical opinion of plaintiff's treating physician because the opinion was unsupported by the facts. However, the administrative record, as relied on by the ALJ, shows that Dr. Kosek's statement to the effect that plaintiff was suffering from a "real pain" was contradicted by the opinions of other examining physicians, plaintiff's own actions, and Dr. Kosek's later conclusions. Tr. 568.

The ALJ found that plaintiff's alleged limitations and symptoms were disproportionate to the objective findings in the medical record. Specifically, the ALJ noted that plaintiff's treating neurosurgeon, Catherine Gallo, M.D., opined that a lumbar myelogram, CT, and MRI showed only minimal findings of a

mild disc bulge at L4-5 and a central herniation at L5-S1 that did not cause any significant root impingement. Tr. 295-296.  In addition, the ALJ gave careful consideration to Dr. Gallo's independent medical exams that raised questions about plaintiff's psychological status and issues of secondary gain. Tr. 294.  The ALJ examined Dr. Kosek's medical reports and noted Dr. Kosek's concern that plaintiff's condition worsened with oral narcotics. Tr. 369.  In fact, by December 1999, Dr. Kosek concluded that it was time to start withdrawing the narcotics.  Tr. 369.  In 2000, plaintiff then changed providers to a doctor who again agreed to supply her with oral narcotics. Tr. 367.

Ronald Turco, M.D., a mental health evaluator, similarly raised concerns about plaintiff's narcotic addiction.  Further, the ALJ reasoned that plaintiff's reported activities were more consistent with those of an individual able to sustain work than they were of a person who was disabled.  The ALJ gave importance to plaintiff's work activities in 2001, where she reported she performed clerical duties for four hours a day, five days a week.

Plaintiff further alleges that the ALJ erred by not obtaining the second page of the 1999 Letter from Dr. Kosek.  An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination. See 20 C.F.R. §§ 404.1512(e), 416. 912(e).  Here, there was sufficient evidence in the medical record to allow the

ALJ to make his disability determination.

B.    Substantial Evidence Supports the ALJ's Credibility
      Assessment

Plaintiff next alleges the ALJ failed to properly assess whether her impairments met or equaled a Listing Impairment (Listing), as codified in 20 C.F.R., Part 404, Subpart P, Appendix 1, so as to be considered severe to constitute disability.  At step three, plaintiff has the burden of showing through medical evidence that her impairments "meet all of the specified medical criteria" contained in a particular listing.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. §§ 404.1520(d), 416.920(d).  Plaintiff failed to meet her burden.  Furthermore, plaintiff only qualifies under a Listing if her testimony regarding the severity of her condition is accepted by the ALJ.  In this instance, the ALJ properly found the plaintiff not credible.

The ALJ generally is responsible for resolving questions of credibility.  Andrews v. Schalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  While an ALJ is responsible for determining the credibility of plaintiff, an ALJ cannot reject plaintiff's testimony without giving clear and convincing reasons.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ's credibility findings must be supported by specific, cogent reasons.  Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  Specifically, the ALJ must identify the

testimony she or he finds not credible and explain what evidence undermines the testimony. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). If the ALJ finds plaintiff's pain testimony not credible, the ALJ "must specifically make findings that support this conclusion," and the findings must be "sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit [the] claimant's testimony." Rollins, 261 F.3d at 856-57.

In making this determination, the ALJ may consider several factors, including: (1) ordinary techniques of credibility evaluation, such as plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by plaintiff that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) plaintiff's daily activities; (4) medical evidence tending to discount the severity of subjective claims; (5) the location, duration, frequency, and intensity of symptoms; (6) precipitating and aggravating factors; (7) the type, dosage, effectiveness, and side effects of any medication; and (8) treatment other than medication. Smolen, 80 F.3d at 1284.

The ALJ provided sufficient evidence from several medical experts that plaintiff's statements concerning her impairments

12 – OPINION AND ORDER

and limitations arising therefrom were not fully credible.
First, the ALJ referred to psychologist Dorothy Anderson's
findings, where she concluded that while the plaintiff had an
affective disorder, a personality disorder, and a substance
addiction disorder, these things, in combination, were non-severe
and caused only a mild restriction of activities of daily living,
including, but not limited to, cleaning, cooking, and driving.
Tr. 218-231.  Dr. Anderson further opined that, given the results
of plaintiff's Minnesota Multiphasic Personality Inventory
(MMPI), plaintiff was likely to somaticize difficult life
circumstances, and these findings were consistent with a non-
severe psychological impairment. Tr. 230.  Second, the ALJ
pointed to a psychiatric examination on September 8, 1999,
administered by Dr. Turco concluding that plaintiff had a
narcotic addiction that dated back to high school.  As further
noted by the ALJ, a report by psychologist, Robert Henry, Ph.D.,
demonstrated similar impairments and while he concluded that such
impairments had been severe since the alleged onset of
disability, he nonetheless found that plaintiff had only mild
restrictions of activities of daily living. Tr. 389.

Moreover, the ALJ pointed to inconsistences in lay witness
reports that described plaintiff's daily behavior and that were
accepted as descriptive of the witness's perceptions.  For
example, Joni Proctor, plaintiff's long-time friend, reported

13 – OPINION AND ORDER

that plaintiff's activities were limited by her pain, but further reported that plaintiff went grocery shopping about once a week, left the house one to four times a week, visited friends and had a meal once or twice a month, and attended parties and showers. Tr. 116.  Ms. Proctor reported that plaintiff drove once or twice a week, walked from two blocks to one-half mile one to five times a week, fixed her own meals once or twice a day, prepared meals for others three to five days per week, but could only stand for five minutes. Tr. 118, 125.  Similarly, Dan Zaiss, plaintiff's partner, reported that plaintiff is unable to sit for longer than 20 minutes, yet reported that plaintiff spends eight to ten hours per day watching TV or listening to music. Tr. 139-140.

     While several courts have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations, the inconsistencies and evidence of malingering in the record detract from and weigh against plaintiff's credibility.  In sum, the ALJ's finding that plaintiff is not credible is reasonable and supported by substantial evidence.

C.    Substantial Evidence Supports the ALJ's Step Five
      Determination that Plaintiff is Not Disabled

     Finally, plaintiff alleges the ALJ erred at step five of the sequential evaluation by finding that plaintiff, in light of her limitations, can engage in other work that exists in the national economy.

At step five, the Secretary must show that plaintiff is able to perform other work which exists in the national economy. Andrews, 53 F.3d at 1043.  The Secretary can satisfy this burden either by applying the guidelines of 20 C.F.R. § 404, Subpart P, Appendix 2, or by eliciting the testimony of a VE with a hypothetical question that sets forth all of plaintiff's limitations. Andrews, 53 F.3d at 1043.  If plaintiff has functional limitations or work restrictions which prevent her from performing the full range of work at a given exertional level, the guidelines cannot be used at step five to determine whether plaintiff is disabled.  Instead, the ALJ must elicit testimony from a VE to determine whether job exists in the national economy that the plaintiff can perform despite her limitations and restrictions. Tacket v. Apfel, 180 F.3d 1094, 1103-04 (9th Cir. 1999).

While a VE may be used to provide more specific information about the requirements of a particular job as it is performed in a particular setting, the ALJ relies primarily on the Department of Labor publication, Dictionary of Occupational Titles (DOT), including its companion publication, Selected Characteristics of Occupations, for information about the requirements of work. 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(b).  These references classify occupations by exertional level, as defined within 20 C.F.R. §§ 404.1567, 416.967, and by skill level, as defined in 20

C.F.R. §§ 404.1568, 416.968.

The ALJ elicited the expert testimony of a VE because he found that plaintiff's RFC would not allow her to perform a full range of work.  In response to the ALJ's question, whether an individual with plaintiff's vocational profile could perform a significant number of jobs in the national economy, the VE testified that plaintiff had the capacity and ability to do those jobs. Tr. 613.  In response to a question posed by plaintiff's attorney, however, the VE conceded that plaintiff's inability to sit for more than two hours a day, or the possibility that she may miss work a few days a month would preclude competitive employment. Tr. 615.

The ALJ explicitly considered plaintiff's functional limitations in relation to the demands of the suggested occupations, and the ALJ properly accounted for plaintiff's ability to procure employment, including part-time employment. After considering the VE's testimony, the ALJ reasonably concluded that plaintiff was able to engage in other work that exists in the national economy.

Plaintiff, however, contends that, as provided by Rodriguez v. Bowen, the ALJ must demonstrate that plaintiff is capable of working an eight-hour day. See 876 F.2d 759, 762 (9th Cir. 1989). I disagree.  The regulations define "substantial activity" to include work "done on a part-time basis[.]" See 20 C.F.R. §

16 – OPINION AND ORDER

404.1572(a); <u>Keyes v. Sullivan</u>, 894 F.2d 1053, 1056-57 (9th Cir. 1990) (providing that a claimant who works five and one-half hours per day, five and one-half days per week engages in substantial gainful activity and thus, is not disabled); <u>Burkhalter v. Schweiker</u>, 711 F.2d 841, 843 (8th Cir. 1983) (providing that a five-hour work day can constitute substantial gainful activity).

Accordingly, the ALJ properly accounted for plaintiff's limitations that were supported by substantial evidence in the record. The VE's responses to the ALJ's questions were reliable and were properly adopted by the ALJ to find plaintiff capable of performing a significant number of jobs in the national economy.

CONCLUSION

The Commissioner's decision is based on substantial evidence and is therefore, affirmed. This case is dismissed. IT IS SO ORDERED.

Dated this  26  day of February 2007.


                                    /s/ Ann Aiken
                                   Ann Aiken
                          United States District Judge